***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and argument of the parties, as well as the additional evidence gathered by Deputy Commissioner Gillen. Following its review, the Full Commission AFFIRMS with modifications the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. That all parties are properly before the North Carolina Industrial Commission and that the Industrial Commission has jurisdiction over the parties and of the subject matter of these actions.
2. That all parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
3. In addition to the other stipulations contained herein, the parties stipulate and agree with respect to the following undisputed facts:
 a. That on or about November 14, 2007 and December 10, 2008, the defendant-employer employed more than three (3) employees, and it and its employees were bound by and subject to the provisions of the North Carolina Workers' Compensation Act, North Carolina General Statute § 97;
 b. That on or about November 14, 2007 and December 10, 2008, there existed between Lou Jones and Edgecombe County Schools an employee/employer relationship;
 c. That on or about November 14, 2007 and December 10, 2008, employer was insured for Workers' Compensation claims through Key Risk Management Services;
 d. That on or about November 14, 2007 and December 10, 2008, plaintiff was employed by the employer at an average weekly wage to be determined pursuant to a properly completed Form 22 submitted by Defendant prior to Hearing. The parties reserve the right to stipulate to the *Page 3 
plaintiff's average weekly wage at any time prior to a determination of this issue being made by the Commission;
 e. That on or about November 14, 2007, plaintiff alleges she sustained an injury by accident arising out of and in the course of her employment with defendant-employer, said accident resulting in an injury to her neck, back, left hip and leg, right arm and left arm;
 f. That on or about December 10, 2008, plaintiff alleges she sustained an injury by accident arising out of and in the course of her employment with defendant-employer, said accident resulting in an injury to her neck, left arm and shoulder, low back, right knee, and teeth;
 g. That the defendants accepted the November 14, 2007 claim for the back injury and right wrist by Form 60.
4. The parties stipulate that the following medical records are authentic as they are maintained in the course of activity of the physicians or institutions identified:
 a. Nash Hospitals; Rocky Mount, North Carolina; 18 pages of records dated January 11, 2008 through July 17, 2008;
 b. Nash Urgent Care; Rocky Mount, North Carolina; 19 pages of records dated November 14, 2007 through November 29, 2008;
 c. Lenoir County Hospital, Kinston; North Carolina; 19 pages of records dated March 24, 2008;
 d. Todd Smith, M.D.; Wilson Orthopaedic Surgery and Neurology Center; Wilson, North Carolina; *Page 4 
 e. Kurt Voos, M.D.; Center for Scoliosis Spinal Surgery, PLLC; Greenville, North Carolina; 5 pages of records dated May 15, 2008;
 f. Boice Willis Clinic Physical Therapy; Rocky Mount, North Carolina; 14 pates of records dated April 11, 2008 through May 19, 2008;
 g. Douglas Slater, M.D., Boice Willis Clinic; Rocky Mount, North Carolina, 11 pages of records dated January 3, 2008 through July 11, 2008;
 h. Danal Snyder, M.D., Carolina Quick Care; Wilson, North Carolina; 13 pages of records dated December 10, 2008 through February 10, 2009;
 i. Physician's Prime Care Center; Kinston, North Carolina; 6 pages of records dated December 20, 2008 and January 3, 2009;
 j. David Miller, M.D.; Carolina Regional Orthopaedics; 4 pages of records dated February 10, 2009.
 *********** EVIDENTIARY ISSUES
In an August 26, 2010 Order by the Full Commission by Chair Pamela T. Young, this matter was reopened to receive additional evidence. On January 19, 2011, Deputy Commissioner Gillen transferred the following materials to the Full Commission: (a) Transcript of Evidence for October 20, 2010; and (b) Deposition of Philip S. Perdue, Jr., M.D. The Full Commission hereby admits the additional evidence submitted by Deputy Commissioner Gillen into the record.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 5 
1. Plaintiff is 59 years old and resides in Kinston, North Carolina.
2. Plaintiff graduated from high school, and obtained a bachelor's degree in English from Winston-Salem State University in 1974.
3. Plaintiff began teaching school in 1979, and taught until taking an early retirement in 2005. Plaintiff then returned "to work retired teacher's double dip and [she] worked up until June 2009 when they did away with that [program]." Plaintiff taught sixth through twelfth grade.
4. Plaintiff testified at the evidentiary hearing that on November 14, 2007, while attempting to get up off a three-legged stool, the heel of her shoe became entangled in the rung of the stool and Plaintiff fell over backwards in the classroom. Plaintiff further testified that her left leg came down on a globe, which broke, that her left arm hit the metal tray on the chalkboard, and that her right-hand side hit the overhead projection and stand. Plaintiff ultimately ended up on the floor, which is covered with indoor/outdoor carpet.
5. On November 14, 2007, the date of the injury, Plaintiff presented at Nash Urgent Care. The medical record indicates that Plaintiff complained of pain in right arm and low back. A radiology report for the right forearm indicated no acute fractures/dislocations detected.
6. Plaintiff received additional treatment for her right forearm from Nash Urgent Care on November 16, 2007 and November 21, 2007. At the November 21, 2007 visit, Plaintiff complained of lower chest pain, and was additionally diagnosed with a rib contusion.
7. On November 28, 2007, Plaintiff returned to Nash Urgent Care. The medical records states "[r]e-evaluation of right wrist. Still c/o pain with swelling. States 5th digit is sore. Chest and back remain sore along with left arm, left leg, and right knee." The Full Commission finds that this is the first reference to any alleged additional injuries stemming from the *Page 6 
November 14, 2007 injury by accident. The remainder of the medical report only addresses the wrist, and the Modified Work Note only places restrictions on the right arm.
8. Plaintiff was last seen at Nash Urgent Care the following day, November 29, 2007. Plaintiff testified that these back-to-back visits were scheduled for the purpose of reviewing x-rays. The medical records indicate that the x-ray was negative and the assessment was a right wrist sprain. The November 29, 2007 Modified Work Note indicated that Plaintiff was "[m]edically clear to work."
9. On March 7, 2008, Plaintiff was treated by Dr. Todd Smith, who is board certified in orthopaedics, of Wilson Orthopaedic Surgery and Neurology Center, P.A. . Plaintiff's chief complaints to Dr. Smith were "[r]ight wrist pain, left rib pain, left arm pain, low back pain, left leg pain, as well as weakness in her arms and legs." Plaintiff further complained of "neck soreness worse on the left." Dr. Smith conducted a "significant workup and evaluation" of Plaintiff, took numerous x-rays, and ordered a series of additional tests and evaluations.
10. Plaintiff was next treated by Dr. Smith on April 8, 2008. After review of the cervical MRI, upper extremity EMG, nerve conduction studies, and physical exam, Dr. Smith diagnosed Plaintiff as follows: (a) cervical degenerative disc disease with radiculopathy; (b) carpal tunnel syndrome; (c) right wrist pain; and (d) low back pain with sciatica on the left. Dr. Smith referred Plaintiff to a back specialist for further evaluation.
11. Dr. Smith testified at his deposition that the diagnosis of radiculitis of both upper extremities "means essentially nerve pain coming from the neck . . . as opposed to nerve pain coming from the wrist." Dr. Smith further opined that while Plaintiff may have had pre-existing arthritis at the time of the November 14, 2007 injury by accident, that the fall could have *Page 7 
certainly "flared things up" and that "the fall and her complaints can certainly go together" when addressing Plaintiff's neck pain.
12. During Dr. Smith's deposition, Defendant inquired about prior treatment that Dr. Smith provided to Plaintiff while practicing with Boice-Willis Clinic, P.A. . A January 17, 2007 MRI report reflects "an axial tear of the posterior horn of the lateral meniscus and tear of the anterior horn of the lateral meniscus." On February 27, 2007, Dr. Smith recommended to Plaintiff that she undergo a right knee arthroscopy with meniscal surgery.
13. Dr. Smith testified regarding the January 2007 MRI report that "the meniscus tear won't heal itself and won't go away" and that if there was no intervening surgery, then an MRI taken two years later is going to reflect the same minuscule tear.
14. Plaintiff was next seen on May 15, 2008, for a surgical consultation by Dr. Kurt Voos, a board certified orthopaedic surgeon, of the Center for Scoliosis and Spinal Surgery, PLLC. Plaintiff complained of neck pain that radiated into her left forearm and right hand. Dr. Voos recommended a trial of cervical epidural steroid injections and released Plaintiff to full duty.
15. Plaintiff testified that she never underwent the cervical epidural steroid injections because at that stage in the process, Plaintiff did not get a full explanation of what would be involved in such injections, and that Plaintiff was told that the treatment by Dr. Voos was not covered by her workers' compensation claim.
16. Plaintiff further testified that she underwent physical therapy at Boice-Willis Clinic prior to her referral to Dr. Voos, that she did not get the injections from Dr. Voos, that she took over-the-counter medications such as Aleve to treat her symptoms, and that she received no *Page 8 
additional medical treatment after Dr. Voos's May 15, 2008 appointment for the November 14, 2007 injury by accident.
17. On December 10, 2008, Plaintiff had a second on-the-job injury by accident. Plaintiff testified that she slipped and fell "forward, flat on the floor." Defendant filed a Form 63 on January 6, 2009, identifying the injury as "contusion rib."
18. Plaintiff received medical care from Carolina Quick Care, formerly known as Nash Urgent Care, and was diagnosed with a rib contusion. The treating physician prescribed Plaintiff Flexeril and Vicodin, and took Plaintiff out of work for two (2) days.
19. Plaintiff was next treated at Carolina Quick Care on December 12, 2008, and was diagnosed with a left shoulder contusion and back. Plaintiff was taken out of work until December 18, 2009. No medical record was provided for a December 18, 2009 visit to Carolina Quick Care.
20. Plaintiff, on her own initiative, also sought medical treatment from Physician's Prime Care Centre in Kinston, North Carolina. Plaintiff was treated on December 20, 2008 for sinus pressure and a cough. The medical provider also noted that Plaintiff had fallen recently and complained of left forearm pain, right elbow, and left hip pain. The next visit at Physician's Prime Care Centre was on January 3, 2009. Plaintiff complained that "left leg pain continues, now has neck and back pain, and right knee pain." The medical record further states that Plaintiff only "has one Hydrocodone left."
21. Following the two visits to Physician's Prime Care Centre, Plaintiff returned to Carolina Quick Care on January 10, 2009. During this visit, Plaintiff was diagnosed with cervical strain and multiple contusions. Plaintiff was allowed to return to work for modified or "seated job only." *Page 9 
22. Plaintiff's next visit to Carolina Quick Care was on January 24, 2009. The medical record indicates that Plaintiff was following up for right knee, left rib, right elbow and cervical strain. It further indicates that Plaintiff's right lower second molar tooth is broken and that the left upper first molar was tender with palpation. The medical record states that Plaintiff's assessment is a cervical strain and that Plaintiff has an "ortho" appointment on February 10, 2009.
23. On February 10, 2009, Plaintiff presented to Dr. David Miller, board certified orthopedic and spine surgeon with Carolina Regional Orthopaedics, for an independent medical evaluation. Dr. Miller's medical record reflects that the referral from workers' compensation was for neck pain and back pain, but that Plaintiff complains of "neck pain, right arm pain, back pain and left leg pain." Dr. Miller made the following finds:
 a. Axial neck pain and right arm pain secondary to slip and fall injury November 2007 with an exacerbating slip and fall injury December 2009 [sic] with MRI evidence of underlying spondylosis, disc disease and spinal stenosis throughout the cervical spine.
 b. Axial low back pain with left leg pain secondary to a slip and fall injury in November 2007 with exacerbating injury on 12/10/08.
Dr. Miller agreed with the course of treatment proposed by Dr. Voos and recommended that Plaintiff "return back to normal work or sedentary type work as a teacher."
24. Plaintiff was next treated by Dr. Philip S. Perdue, board certified orthopedic surgeon with Orthopaedics East, Inc, on March 27, 2009. Plaintiff complained of constant bilateral knee pain. Dr. Perdue's medical record reflects that "[t]here is mild to moderate crepitus in both knees" and that "[t]here is tenderness around the lateral patellar facet in both knees." An MRI was recommended for further review. *Page 10 
25. Dr. Perdue treated Plaintiff again on May 1, 2009. A review of the MRI showed no meniscus tear on the left knee, but a lateral meniscus tear on the right knee with superimposed osteoarthritis. Dr. Perdue recommended physical therapy and working in a sedentary type position.
26. Dr. Perdue next treated Plaintiff on July 2, 2009, at which time Plaintiff complained of back, elbow, hip, and knee pain. Dr. Perdue clarified that he was only providing treatment for her knees, that he felt she should continued with physical therapy, and that "she should be able to return to work at school when session returns in late summer." Pursuant to a letter from the nurse case manager, Dr. Perdue clarified in a July 15, 2009 medical record that Plaintiff should get additional physical therapy, that she has been released from care in reference to her bilateral knees, that she may return to work with no restrictions, and that there is no partial permanent disability rating for either knee.
27. Dr. Perdue testified at his deposition that the determination that Plaintiff was at maximum medical improvement and that her impairment ratings were zero (0) prior the completion of additional physical therapy was not premature. Dr. Perdue stated that Plaintiff's rating would not be altered by any additional physical therapy, but merely that Plaintiff could have gained additional strength during that process.
28. Following her release from Dr. Perdue, Plaintiff was seen by Dr. Clifford R. Wheeless of Orthopaedic Specialists of North Carolina. On January 6, 2010, Dr. Wheeless assessed Plaintiff for a "second opinion regarding bilateral knee pain, with left greater than right." Dr. Wheeless's medical record reflects that both of Plaintiff's knees were well aligned and with full ROM, with prominent medial and lateral join line tenderness. Dr. Wheeless *Page 11 
determined that he could not provide a "rating for her worker's compensation until we have a rigorous trial of nonoperative treatment."
29. Following the second opinion of Dr. Wheeless, Plaintiff returned for treatment with Dr. Perdue on February 5, 2010. Dr. Perdue's medical record reflects that Plaintiff's knees are mildly effused and mild crepitus and joint line tenderness in the medial side. The February 5, 2010 medical record further states that Plaintiff "has patellofemoral disease and arthritis . . . this is causing her pain." Plaintiff's knees were injected with Celestone and Marcaine.
30. Dr. Perdue treated Plaintiff on March 15, 2010, April 28, 2010, and June 9, 2010. Plaintiff was participating in physical therapy and work hardening during this time frame. Plaintiff underwent a Functional Capacity Evaluation ("FCE") on July 19, 2010. The FCE found that Plaintiff "is capable of sustaining the Medium level of work for an 8-hour day/40-hour week." For the task of stair climbing, the FCE indicated that Plaintiff was self-limiting by pulling herself up with her arms.
31. Plaintiff followed up with Dr. Perdue on August 11, 2010. Dr. Perdue reviewed Plaintiff's FCE and made a determination that Plaintiff was at maximum medical improvement. Dr. Perdue indicated that he had no return to work restrictions for Plaintiff, and rated her lower extremities as follows: (a) seven (7%) percent permanent partial impairment for the right leg; and (b) zero (0%) percent permanent partial impairment for the left leg. Plaintiff was released from treatment by Dr. Perdue, with instructions to return as needed.
32. Dr. Perdue testified at his second deposition that Plaintiff's prior meniscal tear identified in January of 2007 was aggravated or accelerated from the fall directly onto her knees on December 10, 2008, thereby causing Plaintiff to be symptomatic and causing her to need medical treatment. *Page 12 
33. The Full Commission finds that Plaintiff sustained compensable injuries to her low back, neck, right arm, and right wrist on November 14, 2007. Based upon the greater weight of the evidence of record, including the deposition testimony of Dr. Smith, the Full Commission further finds that the compensable neck injury was caused by aggravation or acceleration of pre-existing arthritis in her neck.
34. The Full Commission finds that Plaintiff sustained compensable injuries to her low back, neck, rib, and right knee on December 10, 2008. Based upon the greater weight of the evidence of record, including the deposition testimony of Dr. Perdue, the Full Commission further finds that the compensable right knee injury was caused by aggravation of the pre-existing osteoarthritis and meniscal tear in Plaintiff's right knee.
35. The Full Commission finds that Plaintiff has not sustained any additional compensable injuries as a result of the November 14, 2007 and December 10, 2008 work injuries.
36. The Full Commission finds, based upon the calculations of a claims examiner of the Form 22 submitted by the parties, that Plaintiff's average weekly wage is $990.01, yielding a compensation rate of $660.04.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to her low back as a result of a specific traumatic incident arising out of and in the course of her employment with Employer-Defendant on November 14, 2007. N.C. Gen. Stat. § 97-2(6). *Page 13 
2. Plaintiff sustained an admittedly compensable injury by accident to her right wrist arising out of and in the course of her employment with Employer-Defendant on November 14, 2007. N.C. Gen. Stat. § 97-2(6).
3. It is well-settled that in a Workers' Compensation claim, the plaintiff has the burden of proving each element of his claim.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980).
4. In this case, the greater weight of the competent expert evidence establishes that Plaintiff's diagnosis of radiculitis for her arms is casually related to nerves injured in her neck on November 14, 2007. Therefore, Plaintiff also sustained a compensable injury to her neck and right arm as a result of admittedly compensable injury on November 14, 2007. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff sustained an admittedly compensable injury by accident to her rib arising out of and in the course of her employment with Employer-Defendant on December 10, 2008. N.C. Gen. Stat. § 97-2(6).
6. It is well-settled that compensation is available for workers who suffer an aggravation of a pre-existing condition as a result of a work-related accident. According to our Supreme Court inMorrison v. Burlington Industries,304 N.C. 1, 282 S.E.2d 458 (1981):
 When a pre-existing, nondisabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent. *Page 14 
Id. at 18, 282 S.E.2d at 470.
7. In this case, the greater weight of the competent expert evidence establishes that Plaintiff's had pre-existing osteoarthritis and a meniscal tear in the right knee that was aggravated or accelerated by the fall on December 10, 2008.
8. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable low back, right wrist, neck, right arm, rib, and right knee conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including medical treatment provided or recommended by her treating physicians. N.C. Gen. Stat. § 97-25.
9. Plaintiff is entitled to continuing temporary total disability compensation at the rate of $660.04 per week until further Order of the Commission. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to medical compensation for treatment of the following compensable injuries: back, right wrist, neck, right arm, rib, and right knee. Defendants shall provide all treatment that is reasonable and necessary to relieve Plaintiff's condition or lessen the period of disability. Such treatment shall include, but is not limited to, cervical epidural steroid injections, physical therapy, and medications as recommended by her treating physician.
2. Subject to an attorney's fee provided herein, Defendants shall pay Plaintiff temporary total compensation at a rate of $660.04 per week until further Order of the Commission. Any past due compensation owed to Plaintiff shall be paid in one lump sum. *Page 15 
3. Plaintiff's counsel is entitled to a reasonable attorney fee of 25% of any sum awarded in paragraph 2 of this Award and said amount shall be deducted from the sums due to Plaintiff and paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the __ day of March 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1